# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KATHLEEN PIERSON,                                    Case No. 1:12-cv-126
    Plaintiff,                                   Beckwith, J.
                                                     Litkovitz, M.J.
   vs.

COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
    Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB) and supplemental security income (SSI).  This matter is

before the Court on plaintiff's Statement of Errors (Doc. 11) and the Commissioner's response in

opposition.  (Doc. 17).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in March 2009, alleging disability since

November 3, 2007, due to bipolar disorder, manic depression, developmental handicap, and lack

of literacy.  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff,

through counsel, requested and was granted a de novo hearing before administrative law judge

(ALJ) Debra Smith.  Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing.  On December 22, 2010, the ALJ issued a decision finding that plaintiff was not

disabled.  Plaintiff's request for review by the Appeals Council was denied, making the decision

of the ALJ the final administrative decision of the Commissioner.

1

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act
> through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November 3,
> 2007, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).
>
> 3. The [plaintiff] has the following severe impairments: borderline intellectual
> functioning (BIF) and an affective disorder, variously diagnosed as bipolar and
> mood disorders (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals one of the listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d),
> 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds the
> [plaintiff] has the residual functional capacity to perform a full range of work at
> all exertional levels but with the following nonexertional limitations:
>> - Can only read, write and do mathematics at a 3rd grade level;
>> - Is capable of performing simple work related tasks; and
>> - Can have only superficial interaction with others, including supervisors,
>>   coworkers and the general public.
>
> 6. The [plaintiff] is capable of performing past relevant work as a bakery helper
> and food assembler.  This work does not require the performance of work related
> activities precluded by [plaintiff's] residual functional capacity (20 CFR 404.1565
> and 416.965).

7. Although the [plaintiff] is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, the undersigned makes the following alternative findings for step five of the sequential evaluation process.

8. The [plaintiff] was born [in] 1977 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The [plaintiff] has a limited (8th grade) education and is able to communicate in English (20 CFR 404.156and 416.964).

10. Transferability of job skills is not an issue in this case because the [plaintiff's] past relevant work is unskilled (20 CFR 404.1568 and 416.968).

11. In the alternative, considering the [plaintiff's] age, education, work experience, and residual functional capacity, other jobs exist in significant numbers in the national economy that the [plaintiff] also can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 3, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 11-20).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred by failing to give controlling weight to plaintiff's treating psychiatrist; and (2) the ALJ erred in finding that plaintiff did not satisfy the listing for mental retardation.

1. The ALJ did not err in weighing the opinion evidence of record or in discounting the opinion of plaintiff's treating psychiatrist.

Plaintiff contends the ALJ erroneously discounted the opinion of A.A. Weech, M.D., her treating psychiatrist, because Dr. Weech treated her for two years on a monthly basis such that his opinion that plaintiff had marked limitations in mental functioning should be given controlling

weight. Plaintiff further asserts the ALJ erred by giving greater weight to the opinion of non-examining state agency psychologist, Alice Chambly, Psy.D., because her opinion was based solely on a review of the record, is overly vague, and includes citations to only those portions of plaintiff's treatment notes which support her opinion that plaintiff has no more than mild to moderate limitations in her mental functioning. For the following reasons, plaintiff's first assignment of error is not well-taken and should be overruled.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c)[1]; *Harris*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a nonexamining physician is entitled to little

---

[1] Regulation 20 C.F.R. §§ 404.1527 and 416.927 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion was previously found at §§ 404.1527(d) and 416.927(d).

weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walters*, 127 F.3d at 529; *Shelman*, 821 F.2d at 321.

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson,* 378 F.3d at 544. The ALJ must likewise apply the factors set forth in §§ 404.1527(c)(3)-(6) and 416.927(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Dr. Weech is plaintiff's treating psychiatrist at Centerpoint Health (Centerpoint). The pertinent record evidence includes treatment notes from Centerpoint from September 2008 to September 2010 (Tr. 263-345) and a mental residual functional capacity (RFC) assessment completed by Dr. Weech on October 12, 2010. (Tr. 376-77). The majority of the Centerpoint

treatment notes are Individual Service Plan Updates completed by social workers and progress notes completed by Dr. Weech. *See, e.g.*, Tr. 275 (December 14, 2009 service plan update documenting goals, risk assessments, and mental status of plaintiff); Tr. 290-91 (August 2010 progress note in which Dr. Weech records plaintiff's subjective reports of depression, good and bad days, and hearing voices). The progress notes contain few objective findings, clinical observations, or medical opinions other than Dr. Weech's diagnoses and alterations to plaintiff's prescription medication. Of the ten progress notes of record, only five contain objective findings. *See* Tr. 304-05 (September 2009 progress note includes Dr. Weech's objective finding that plaintiff's anxiety and depression have improved); Tr. 302-303 (on November 3, 2009, Dr. Weech noted that the "stigma of [post-traumatic stress disorder]" persists and a finding that plaintiff had gained 11 pounds); Tr. 298-99 (February 16, 2010 treatment notes include notations that plaintiff's roommate was scheduled for back surgery and a finding of weight gain); Tr. 294-95 (on June 1, 2010, Dr. Weech's objective findings consisted of his notes regarding the frequency and dosage of plaintiff's medications); Tr. 292-93 (on July 13, 2010, Dr. Weech noted that plaintiff's Seroquel helped her with her sleep problems).

The other medical evidence from Centerpoint includes an October 2, 2008, diagnostic assessment in which plaintiff was noted as being cooperative, attentive, with slowed psychomotor functioning but normal activity, clear though, appropriate affect, and depressed mood. Plaintiff was described as being low functioning and was referred for complete physical and psychological evaluations. (Tr. 263-67). The Individual Service Plan Updates include findings that plaintiff has consistently met therapeutic goals, such as learning to cope with anger, becoming self-aware of anger-inducing triggers, and not blaming others. (Tr. 272, 275, 278, 281). Records from group

8

therapy at Centerpoint include notations that plaintiff's affect at various sessions varied from appropriate, inappropriate, congruent, to flat and her mood was described as ranging from euthymic, labile, pleasant, to depressed. (Tr. 318-44). Plaintiff was described as being friendly and upbeat with a congruent affect, though with "cognition impaired by mental retardation" and she was diagnosed with bipolar I disorder, PTSD, and mild mental retardation. (Tr. 232-34).

The only opinion evidence from Centerpoint regarding plaintiff's mental RFC comes from an October 12, 2010, two-page mental RFC assessment completed by Dr. Weech. Dr. Weech opined that plaintiff had marked limitations in the areas of understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Notably, Dr. Weech's RFC assessment contains no explanatory diagnosis or assessment and no citation to supporting clinical evidence. (Tr. 376-77).

The ALJ gave "little weight" to Dr. Weech's RFC assessment because "[Dr. Weech] provided no rationale and no diagnoses or clinical observations to support his conclusions. Moreover, Dr. Weech's opinions are in stark contrast to the objective findings within the [plaintiff's] recent psychiatric evaluations and therapy progress notes, which . . . show improvement in the [plaintiff's] symptoms of depression to only moderately affecting her functioning." (Tr. 18). In a footnote, the ALJ noted that "[t]here is an indication that Dr. Weech's assessment may have been incomplete, as only two pages were received in the facsimile transmission from the [plaintiff's] representative." *Id.* The ALJ stated that plaintiff's counsel had been contacted in order to obtain any potentially missing pages but none had been submitted as of the date of the ALJ's ruling. *Id. See also* Tr. 218 (Report of Contact).

The ALJ's decision to afford "little weight" to Dr. Weech's opinion is supported by

9

substantial evidence.  The ALJ reasonably determined that Dr. Weech's opinion lacked reference to or support from the objective evidence of record and was not supported by the progress notes from Centerpoint which demonstrate that plaintiff's depressions was improving.  For example, while Dr. Weech opined that plaintiff had marked limitations in her ability to interact with the general public, to get along with peers, or to set realistic goals (Tr. 377), treatment notes from Centerpoint reflect that plaintiff consistently offered contributions to group therapy discussions, including providing possible suggestions for coping, and was pleasant and empathic, offering encouragement to other group members (Tr. 318-21, 323, 327-30), and was able to set and meet goals such as responding appropriately to conflict and not blaming others.  (Tr. 275, 278, 281).  It is the Commissioner's function to resolve conflicts in the medical evidence.  *Felisky*, 35 F.3d at 1036 (6th Cir. 1994); *Hardaway v. Sec'y of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently.  *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Sec'y of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990).  Substantial evidence supports the ALJ's determination to afford "little weight" to Dr. Weech's opinion on the ground of inconsistency, regardless of how plaintiff or the Court would have resolved the conflict.  *See Kinsella*, 708 F.2d at 1059.  The ALJ identified that Dr. Weech's two-page RFC assessment was inconsistent with the progress and treatment notes and evaluations documenting plaintiff's cooperation with group therapy and ability to set and reach goals.  The ALJ's decision to discount Dr. Weech's opinion on the basis of inconsistency is substantially supported.

Plaintiff argues the ALJ rejected Dr. Weech's opinion "because he only filled out a portion of the Mental RFC form." (Doc. 11 at 3). Plaintiff misstates the ALJ's rationale. The ALJ did not discount Dr. Weech's opinion because he inadvertently failed to complete the form in some manner, but because the form consisted solely of checked boxes and lacked any citation to objective or clinical evidence or substantive discussion supporting Dr. Weech's cursory opinion. As Dr. Weech's RFC assessment is not supported by his own treatment notes or any other objective or clinical evidence of record, the ALJ's determination that it was deserving of "little weight" is substantially supported. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted).

Plaintiff further contends the ALJ erred by giving "great weight" to Dr. Chambly's opinion as it was based solely on a review of the record evidence. Dr. Chambly's opinion was based on a review of plaintiff's subjective statements, the WAIS III test scores and report, and notes from Centerpoint. Dr. Chambly opined that plaintiff had no more than moderate limitations in the areas of understanding and memory, concentration and persistence, social interaction, and adaptation. She diagnosed plaintiff with borderline intellectual functioning, bipolar disorder and mood disorder not otherwise specified. Dr. Chambly opined that plaintiff has mild limitations in activities of daily living; moderate limitations in maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Chambly further opined that plaintiff is capable of simple work-related tasks requiring only superficial interaction with others, including supervisors, co-workers, and the general public. (Tr.

11

236-38).

In deciding to give "great weight" to Dr. Chambly's opinion, the ALJ stated that it "properly balance[d] the [plaintiff's] allegations with her demonstrated capabilities in her work history and daily activities and with the clinical observations of medical professionals in this case." (Tr. 17). Plaintiff asserts that contrary to the ALJ's finding, Dr. Chambly's opinion is deficient as it contains selective citations to supporting treatment notes and ignores contrary notes. (Doc. 11 at 5). A review of Dr. Chambly's opinion demonstrates that her assessment accurately reflects the medical evidence of record. Dr. Chambly's RFC assessment includes reference to negative treatment notes, specifically that plaintiff continued to have ongoing depression, anxiety, and mild paranoia. (Tr. 238). However, as discussed above, the Centerpoint treatment notes contain largely positive findings and demonstrate and upward trend in plaintiff's depression and ability to work with her peers. Dr. Chambly appropriately considered these progress notes in providing her opinion and, further, accounted for the "negative" notes and plaintiff's subjective reports of difficulty dealing with conflict and others by finding that plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions; to perform activities within a schedule; to interact appropriately with the public and get along with coworkers; and to respond to changes in the work setting. (Tr. 236-37). There is no supported medical opinion evidence of record demonstrating that plaintiff has greater limitations than those found by Dr. Chambly. Consequently, the undersigned finds that the ALJ's determination to give "great weight" to Dr. Chambly's opinion is substantially supported.

Lastly, plaintiff argues that Dr. Chambly's opinion is deficient because she opined that plaintiff is limited to "superficial" interactions without defining "superficial." This argument is

not persuasive. The term "superficial" is in common usage - it is not a medical term or term of art requiring expansion or clarification. This is especially the case considering that VEs are well-versed in drawing conclusions about an individual's abilities to perform work based on their limitations. It is common in the realm of mental health RFC assessments to opine that an individual is limited to "superficial" interaction with others and for the term to be used in formulating RFCs and posing hypothetical questions to VEs at ALJ hearings. *See, e.g., Joyner v. Astrue*, 584 F. Supp.2d 1203, 1210 (N.D. Iowa 2008); *Flaherty v. Halter*, 182 F. Supp.2d 824, 832-33 (D. Minn. 2001). Further, review of the ALJ hearing transcript demonstrates that despite the purported vagueness of the term, any error would be harmless as the VE was able to understand the term and testified that there were jobs in the local and national economy that plaintiff could perform. *See* Tr. 62-63. Given the VE's ability to understand the term "superficial" as used by the ALJ and to answer the hypothetical questions posed by the ALJ, the undersigned does not find that the ALJ erred by not providing a more specific contextual definition. Because the hypothetical question is supported by the record with regard to plaintiff's ability to engage in only "superficial" interaction with others, and because the VE was able to understand the question and draw conclusions based upon the term provided, the ALJ's failure to further define the term "superficial" was not erroneous.

Here, the ALJ gave "good reasons" for discounting Dr. Weech's opinion by citing its internal inconsistencies and inconsistency with Dr. Chambly's opinion. *Drumm v. Astrue*, No. 3:09-cv-62, 2010 WL 1258082, at *7 (S.D. Ohio Feb. 19, 2010) (Report and Recommendation), *adopted*, 2010 WL 1258221 (S.D. Ohio Mar. 26, 2010) (ALJ not required to give treating physician controlling, or even great, weight where doctor's opinions were internally inconsistent

13

and unsupported). *See also Wilson*, 378 F.3d at 544 (ALJ not required to give treating source opinion most weight where it is "inconsistent with other substantial evidence in [the] case record."); *see also* SSR 96-2p ("controlling weight may not be given to [a medical source] opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record."). Accordingly, the ALJ's decision complies with agency regulations, is supported by substantial evidence, and should not be disturbed. *See* 20 C.F.R. 404.1527(d)(2); *Kinsella*, 708 F.2d at 1059.

2. The ALJ did not err in finding that plaintiff did not meet or equal the Listing for mental retardation.

Listing 12.05 provides in pertinent part:

> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

> OR

> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

> 1. Marked restriction of activities of daily living; or

> 2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C, D.

A claimant will meet Listing 12.05 for mental retardation "only '[i]f [her] impairment satisfies the diagnostic description in the introductory paragraph" and the criteria of subsection C or D. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)). Accordingly, to satisfy Listing 12.05C, plaintiff must show (1) "significantly subaverage general intellectual functioning;" (2) "deficits in adaptive functioning" which initially manifested during the developmental period (i.e., before age 22); (3) a valid IQ score between 60 through 70; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Daniels v. Comm'r*, 70 F. App'x 868, 872 (6th Cir. 2003). To satisfy Listing 12.05D, plaintiff "must establish manifestation of deficits in adaptive functioning prior to the age of 22, a valid I.Q. of 60 through 70, and at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 460 n.1 (6th Cir. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05D).

"*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of

15

community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV, p. 49.

Plaintiff claims that she meets Listing 12.05C because: (1) she began to display significantly subaverage intellectual functioning while in grammar school as evidenced by school records documenting that she was enrolled in an individualized education program for developmentally handicapped children; (2) she has a valid IQ score of 61 on the WAIS-III administered; and (3) she has other mental impairments, namely her bipolar disorder and depression, that impose additional and significant work-related limitation of function.  Plaintiff further claims, in the alternative that she meets Listing 12.05D because she has a valid IQ score of 61 and marked limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace due to bipolar disorder and depression.  Plaintiff contends that in determining her impairments do not meet Listing 12.05C, the ALJ improperly relied on her status as her mother's guardian and her work history and mischaracterized evidence from plaintiff's grammar school records in determining that plaintiff has "a much higher adaptive functioning than someone who is mentally retarded."  (Tr. 14).

The Commissioner argues that the ALJ reasonably determined plaintiff's impairments do not meet or equal any in the Listing.  The Commissioner asserts that the ALJ reasonably found that plaintiff does not have a valid IQ score which satisfies Listing 12.05.  The Commissioner further contends the ALJ reasonably determined that plaintiff does not have deficits of adaptive functioning demonstrative of someone who is mentally retarded.  The Commissioner also argues that the ALJ adequately considered plaintiff's bipolar disorder and depression in combination in determining that they did not meet or equal a listed impairment, and that Dr. Chambly's opinion

that plaintiff did not meet or equal a listed impairment demonstrates that the issue of medical

equivalence was adequately considered. *See Curry v. Sec'y of HHS*, 856 F.2d 193, 1988 WL

89340 at *5 (6th Cir. Aug. 28, 1988) (citing *Fox v. Heckler*, 776 F.2d 738, 742 (7th Cir. 1985))

(reviewing physician's opinion that plaintiff's impairment did not meet or medically equal a listed

impairment demonstrates that the question of medical equivalence was adequately considered by

ALJ)).

Plaintiff's second assignment of error should be overruled as the ALJ's determination that

plaintiff did not meet or equal Listing 12.05C or D is substantially supported by the record

evidence. (Tr. 12-14). In making this determination, the ALJ reasonably relied on Dr.

Chambly's conclusion that plaintiff is of borderline intellectual functioning rather than mentally

retarded. Dr. Chambly's conclusion is well-supported by her findings and the evidence of record.

Dr. Chambly took into account plaintiff's subjective reports, educational history, work history,

daily activities, IQ scores and accompanying report, and treatment notes from Centerpoint in

rendering her assessment. (Tr. 236-53). Dr. Chambly acknowledged plaintiff's reported

difficulties relating to others, handling stress, following instructions, reading, and writing, and

that she cannot cook or drive. She further noted that plaintiff had the following activities of daily

living: watching television, shopping with her friend, doing laundry, and daily bathing. Dr.

Chambly acknowledged that plaintiff received treatment at Centerpoint and cited to treatment

records showing that plaintiff: has made progress in handling anger; is managing her depression

with medication but continues to have depressed mood and anxiety; has been noted as cheerful

and cooperative with congruent affect and goal directed thought processes; has mild paranoia;

and denies thoughts of self-harm or harming others. (Tr. 238). Dr. Chambly opined that plaintiff

did not have adaptive functioning deficits sufficient to satisfy the 12.05 criteria. A review of the record evidence supports Dr. Chambly's opinion and the ALJ's reliance thereon.

Plaintiff relies heavily on her IQ score of 61 pursuant to the WAIS III report of Richard E. Sexton, Ph.D, in arguing that she meets the 12.05 criteria. However, plaintiff ignores Dr. Sexton's opinion that she is capable of performing simple repetitive-type tasks; is able to understand, recall, and carry out simple instructions; is only mildly impaired in her ability to interact with others; is only mildly impaired in her ability to tolerate daily stress and the pressures of the work environment; and is capable of managing her own benefits. (Tr. 224). Further, despite the score of 61, which Dr. Sexton stated "would suggest [plaintiff] is functioning within the mild range of mental retardation," he, like Dr. Chambly, diagnosed plaintiff with borderline intellectual functioning and not mental retardation. (Tr. 221-22). Given Dr. Sexton's complete opinion which suggests that plaintiff is capable of unskilled work with limitations, the IQ score of 61, taken alone, does not demonstrate that plaintiff meets or medically equals Listing 12.05. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675-76 (6th Cir. 2009) (affirming ALJ finding that plaintiff did not meet Listing 12.05 despite valid IQ score of 69 where record did not support finding that plaintiff had adaptive-skills limitations).[2]

Moreover, treatment records from Centerpoint include notations which support Dr. Chambly's opinion that plaintiff does not meet or equal Listing 12.05. As discussed, *supra*, these notes show that plaintiff regularly contributed to group therapy in a positive manner, offering advice and encouragement, and was pleasant and empathic (Tr. 318-21, 323, 327-30)

---

[2] To the extent the Commissioner contends that plaintiff's IQ score of 61 does not meet the 12.05 criteria because the test was administered by a graduate student and, consequently, is not a "valid score" for purposes of the listing, this argument is not well-taken. The Commissioner has cited to no authority nor is the Court aware of any in

and was goal-oriented. (Tr. 275, 278, 281). Further, plaintiff reports that she is capable of attending to her personal care, does some cleaning, cooking, taking public transportation, and shopping (Tr. 38, 39, 179, 201), and cares for her mother with assistance from aides and family. (Tr. 36-37, 40). Plaintiff currently lives with a friend, but has previously lived with her mother and with a boyfriend. (Tr. 36). Plaintiff also has been able to sustain gainful employment for an extended period. (Tr. 171). This evidence demonstrating plaintiff's ability to interrelate in a supportive and cooperative manner with peers and care for herself and her mother supports Dr. Chambly's opinion that plaintiff does not have deficiencies in adaptive functioning sufficient to meet the criteria of Listing 12.05. *See West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (ability to care for daily needs, pay bills, shop for groceries, use public transportation, interact with friends and neighbors, and engage in other activities supports finding that plaintiff is not deficient in adaptive functioning). The above evidence of daily activities inconsistent with a finding of deficits in adaptive functioning substantially supports the ALJ's decision.

To the extent that plaintiff asserts her grammar school records support a finding that she meets or medically equals Listing 12.05, the ALJ's finding to the contrary is supported by substantial evidence. Plaintiff was enrolled in an individualized education program through Cincinnati Public Schools from 1983 to 1991. (Tr. 346-74). The record includes outlines of annual goals and instructional objectives, *e.g.*, in first grade plaintiff's goals were to be able to count from one to ten, and listen to and comprehend a short story. (Tr. 347). These records demonstrate that plaintiff participated in limited regular activities such as lunch, library use, gym, art, shop, home economics, assemblies, field trips, and recess. (Tr. 348, 352, 355, 358, 362,

---

which it has been held that a psychological test administered by a graduate student and endorsed by a psychologist is not "valid."

368).  There are no diagnostic test results or clinical data contained in these school records.

Rather, they primarily contain teachers' notes on plaintiff's level of functioning.  For example,

when plaintiff was in second grade she was noted as having reading skills at a 6.3 year old age

level and writing skills at a 5.3 year old age level and was described as functioning at a first

grade level.  (Tr. 549-50).  Grade six notes indicate that plaintiff was doing math at a third grade

level and science at a second grade level, but the teacher noted that if plaintiff was "given time

[and] encouragement she can succeed."  (Tr. 363, 365).  In the 1990-91 school year, plaintiff was

described as functioning at a mid-third grade level in reading, math, spelling, and phonics.  (Tr.

374).  While these records demonstrate that plaintiff was functioning at a below-average level

during grammar school, the records in themselves are insufficient to demonstrate "significantly

subaverage general intellectual functioning with deficits in adaptive functioning" under the

listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  Rather, the records support the conclusion

that she had poor attendance, a difficult home life, and low self-esteem.  (Tr. 215, 369, 372).  As

noted by the ALJ, plaintiff had 48 absences in ninth grade supporting the ALJ's reasonable

conclusion that plaintiff's lack of achievement was not due solely to her adaptive functioning

capabilities.  (Tr. 14, citing Tr. 215).  *See Hayes*, 357 F. App'x at 676 (finding that poor

academic record insufficient to establish subaverage intellectual functioning for Listing 12.05

where plaintiff was excessively absent from school).  Plaintiff has offered no other evidence

establishing an onset of subaverage intellectual functioning before age twenty-two and the instant

school records contain no diagnostic testing results or opinions from mental health specialists

opining that plaintiff experienced deficits demonstrative of mental retardation.  Rather, the

teacher notes indicate that plaintiff was capable of achieving academic success with time and

encouragement. In light of the totality of this evidence, the undersigned finds that the ALJ's decision that the record does not support a finding that plaintiff meets or medically equals Listing 12.05 is substantially supported. *Id.* at 677 (citing *West*, 240 F. App'x at 698) (affirming finding that plaintiff did not meet or equal Listing 12.05 where plaintiff did not demonstrate onset before age twenty-two).

As for plaintiff's alternative 12.05D argument, the undersigned finds that the record evidence substantially supports the ALJ's determination that plaintiff did not have marked limitations in the areas of activities of daily living; maintaining social functioning; or maintaining concentration, persistence, or pace to satisfy the listing. The only medical opinion of record supporting marked limitations is Dr. Weech's two-page RFC assessment. For the reasons stated above, the ALJ properly discounted this opinion as it was not supported by clinical or diagnostic testing and was inconsistent with other evidence of record. In contrast, both Dr. Sexton and Dr. Chambly opined that plaintiff has no more than moderate limitations in these areas. The ALJ reasonably relied on this evidence in finding that plaintiff did not have marked limitations sufficient to satisfy the 12.05D criteria. Consequently, the ALJ's decision is supported by substantial evidence and should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 2/1/13

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KATHLEEN PIERSON,                              Case No. 1:12-cv-126
    Plaintiff,                                   Beckwith, J.
                                               Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).